# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

In re:

Jeffery C. Frazier,
Jennifer A. Frazier,

        Debtors

Case No. 08-10094-RGM

Chapter 7

## MOTION TO DISMISS PURSUANT TO 11 U.S.C. § 707(b)

     Comes Now, W. Clarkson McDow, Jr., United States Trustee, and moves the court to dismiss this case because the granting of relief would be an abuse of the provisions of chapter 7 of the Bankruptcy Code pursuant to Section 707(b)(1) and (3). In support of this motion the following representations are made:

    (1)    The court has authority to hear and decide this matter. 28 U.S.C. § 1334(a) and (b).

    (2)    This is a core proceeding. 28 U.S.C. § 157(a) and (b)(1).

    (3)    On January 9, 2008, Jeffery C. and Jennifer A. Frazier, the debtors, filed a petition for relief under chapter 7 of the Bankruptcy Code. Case Docket #1.

    (4)    The debtors' debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose." Voluntary Petition.

    (5)    The meeting of creditors was initially scheduled for February 11, 2008. Case Docket # 4. It was then rescheduled, conducted, and concluded on February 25, 2008. Case

Docket # 18.

(6) On April 3, 2008, the United States Trustee filed a motion to enlarge the time period to file a motion to dismiss the case pursuant to Section 707(b)(1) and (3) of the Bankruptcy Code. The motion is to be heard on May 13, 2008. Case Docket # 32.

(7) The debtors have not filed any amendments to the petition, schedules, or statement of financial affairs.

(8) The debtors stated that the presumption of abuse does not arise. Chapter 7 Statement of Current Monthly Income and Means-Test Calculation (hereinafter "MTF").

(9) The United States Trustee does not dispute this conclusion.

(10) Jeffery C. Frazier is a system engineer with Northrup Grumman Corporation. Jennifer A. Frazier is a program control accountant with Northrop Grumman Corporation. Schedule I-Current Income of Individual Debtor(s).

(11) The debtors monthly gross income is $15,106. Schedule I, line 1. In addition, Mr. Frazier receives $230 a month from the Veterans Administration. Schedule I, line 11.

(12) The debtors annualized currently monthly income is $186,792. MTF, line 13.

(13) The debtors household size is five. MTF, line 14b. There are three minor children in their household.

(14) The debtors unsecured debt is $266,150. Creditors holding unsecured priority claims total $5,000, and creditors holding unsecured nonpriority claims total $261,150. Summary of Schedules.

(15) The debtors currently reside at and own a house located at 25726 Meadowhouse Court, South Riding, Virginia. In addition, the debtors own two other pieces of real estate: a

house located at 3405 Holly Circle, Triangle, Virginia 20172 and a house located at 201 Old Sanford Road, Berwick, Maine.   Schedule A-Real Property.

(16)   The debtors do not intend to keep the Triangle and Maine houses.[1]

(17)   The debtors' monthly mortgage payment on their current residence is approximately $7,900. This amount includes both the home mortgage payment and the real estate taxes which are not escrowed..  Schedule J-Current Expenditures of Individual Debtor(s).

(18)   The debtors' monthly electricity, heating fuel, water and sewer expense on their residence is $450.  Schedule J.

(19)    Their house is about 5000 square feet, with five bedrooms, and five and a half baths. Each bedroom has a bath.  The lot size is a quarter of an acre.[2]

(20)   The debtors purchased the house in April 2006 for $1,040,000.[3]

(21)   The amount of the secured claim on their residence is $1,040,000.  Schedule A-Real Property.

(22)   The debtors owe approximately $200,000 more on their house than its current value.[4]

---

[1] The Chapter 7 Individual Debtor's Statement of Intention, dated January 8, 2008, states that the debtors will retain and continue to make regular payments on all three houses.  However, in an examination conducted by the United States Trustee of Mr. Frazier on April 15, 2008, he testified that both the Maine and Triangle houses have been "on the market" for sale.  Transcript, Page 26, line 5.

[2] Transcript, Page 20, line. 11.

[3] Transcript, Page 21, line12.

[4] Schedule A-Real Property states that the current value of the debtors' residence and the amount of the secured claim are equal, $1,040,000.  However, at the 2004 examination Mr. Frazier testified that the house was worth $200,000 less than the amount owed on it.
BY MR. COUNTS:

(23) The Internal Revenue Standard local standard for debtors applicable location and household size is $1,954. MTF, line 20Ba.

(24) The debtors have three automobiles. Schedule B, no. 25, Schedule D.

| Description | Current Value | Amount Due on Vehicle |
|---|---|---|
| 2005 Toyota Sienna | $20,000 | $22,676 |
| 2006 Toyota 4-Runner | $20,000 | $23,425 |
| 2007 Toyota Tacoma Truck | $18,000 | $19,874 |

(25) The amount owed on each vehicle is greater than its respective value.

(26) The debtors monthly automobile payments total $1,490. Schedule J-Current Expenditures of Individual Debtor(s), line 13a.

(27) The debtors are intending to reaffirm their debt on all three vehicles.[5]

Dismissal of Case is Warranted Pursuant to § 707(b)(1) and (3)-Totality of the Circumstances

(28) In cases where the presumption of abuse does not arise or is rebutted, the court may still dismiss a case if it finds that the case was filed in bad faith or under the totality of the circumstances the debtor's financial situation demonstrates abuse.

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption ... does not arise or is rebutted, the court shall consider-
> (A) whether the debtor filed the petition in bad faith; or

---

**Q. Let me ask you. Could you sell your house now?**
A. No. We would take a loss.
....
We have new houses right now, the same type and model being built in our community for $800,000 brand new from the foundation up. Because houses are not selling. People are not buying.

[5] Transcript, Page 40, line 22.
**Q. [Jack Frankel] And you intending to reaffirm all three [vehicles] of these?**
A. Yes.

> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3)(A) and (B).

(29) Congress, by the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), made two significant changes to prior law. First, it reduced the threshold for dismissal from "substantial abuse" to simply "abuse." Second, it eliminated the presumption in favor of discharge of the debtor.

(30) The change from the prior law's standard of "substantial abuse" to "abuse" was part of the overall effort by Congress to stem the increase in personal bankruptcy filings, reduce the "significant losses asserted to be associated with bankruptcy filings" that are borne by the general public, and close or reduce, "the loopholes and incentives that allow and-sometimes - even encourage opportunistic personal filings and abuse." H.R. Rep. 109-311 at 91-92 (2005).

(31) As a report on a prior version of BACPA noted:

> Dismissal for abuse-Dismissal under 707(b) is also authorized when there is "abuse". It is intended that by changing the standard for dismissal from "substantial abuse" to "abuse", stronger controls will be available to the courts, the United States trustee or bankruptcy administrator, private trustees and creditors to limit the abusive use of chapter 7 based on a wide range of circumstances. The "bad faith" and "totality of the circumstances" of the debtor's situation is adopted as an appropriate standard. It is intended that all forms of inappropriate and abusive debtor use of Chapter 7 will be covered by this standard, whether because of the debtor's conduct or the debtor's ability to pay. If a debtor's case would be dismissed today for "substantial abuse" as in *In re Lamanna,* 153 F.3d. 1, (1st Cir. 1998), it is intended that the case should be subject to dismissal under H.R. 2415. Cases which have decided that a debtor's ability to pay should not be considered when determining

> abuse, or can be outweighed if the debtor is otherwise acting in good faith, are intended to be overruled. *In dealing with ability to pay cases which are abusive, the presumption of abuse and the safe harbor protecting debtors from application of the presumption will not be relevant.*

*Bankruptcy Reform Act of 2000-Conference Report*, 146 Cong. Rec. S 11683-02, S 11703 (2000) (emphasis added) (section by section explanation of HR 2415, prior but identical version of Section 707(b)(3)).

(32) In referring to *In re Lamanna,* 153 F.3d. 1, (1st Cir. 1998), Congress endorsed the First Circuit's definition of the "totality of the circumstances" and its holding that ability to repay, by itself, would constitute sufficient cause for dismissal of a chapter 7 case. The court in *Lamanna* specifically noted that:

> We adopt the "totality of the circumstances" test as the measure of "substantial abuse" under § 707(b) of the Bankruptcy Code. In doing so, we join the Fourth, Sixth, Eighth and Ninth Circuits in holding that a consumer debtor's ability to repay his debts out of future disposable [income] is not per se 'substantial abuse' mandating dismissal. *At the same time, we do not require a court to look beyond the debtor's ability to repay if that factor warrants the result. We explicitly reject the notion that 'substantial abuse' refers only to bad faith acts, although a court may consider a debtor's bad faith in making its decision.*

*Lamanna,* 153 F.3d. at 2 (emphasis added).

(33) Congress in BAPCPA and its adoption of the *Lamanna* definition of "abuse" and "totality of the circumstances" is a specific rejection of the Fourth's Circuit's approach in *In re Green,* 934 F.2d. 568 (4th Cir. 1991). In *Green*, the Fourth Circuit held that a debtor's ability to repay his debts "standing alone" was insufficient to satisfy the totality of circumstances test for "substantial abuse." The *Green* court relied on the provisions in the prior law's Section 707(b)

that "There shall be a presumption in favor of granting the relief requested by the debtor." The court in *Green* noted "The debtor's relative solvency may raise an inference that [abuse of the bankruptcy process] exists. Nevertheless, in light of the statutory presumption that a debtor's chapter 7 petition should be granted, solvency alone is not a sufficient basis for a finding that the debtor has in fact substantially abused the provisions of chapter 7." *Green*, 934 F.2d. at 572.

(34)  BAPCPA eliminated the presumption in favor of the debtor's discharge that was the underpinning of the court's conclusion that ability to pay alone was an insufficient basis for dismissal of a debtor's chapter 7 case.

(35)  Other courts have noted that the standard for abuse under BAPCPA is lower than the prior law's "substantial abuse" standard, and that the debtor's ability to repay a portion of his or her unsecured nonpriority debt may constitute abuse under 11 U.S.C. § 707(b)(3). *See In re Mestemaker,* 359 B.R. 849, 855, (Bankr. N.D. OH 2007) ("the plain language of § 707(b)(3), read in conjunction with § 707(b)(1) and (2), is clear and compels a conclusion that a court must consider a debtor's actual debt-paying ability in ruling on a motion to dismiss based on abuse where the presumption does not arise or is rebutted.").

(36)  The debtors have the ability to repay a substantial amount on their unsecured debts. However, their decision to retain their current residence and continue paying a $7,900 monthly mortgage, and their decision to retain their three vehicles and continue paying approximately $1,500 car payments, coupled with the fact that the house and vehicles are worth less than the amount owed on them, demonstrates bad faith and self-inflicted undue hardship.

(37)  Their choices in this case evidence a flagrant abuse of the bankruptcy law. Bankruptcy is meant to provide debtor with a fresh start, not a head start. *In re Waites v. Braley*,

110 B.R. 211, 215 (E.D. VA 1990) ("It is morally and legally unconscionable that a person should be able to extinguish his obligations without first making a reasonable effort to fulfill them. Indeed, allowing a debtor to escape debts that he has the ability to repay would provide a "head start" rather than a "fresh start" envisioned in Chapter 7.") (citations omitted, quotation marks omitted).

(38) Without showing special needs, paying $7,900 a month for housing is unreasonable. It borders on an affront to the purpose of bankruptcy relief and the intent of BAPCPA. *In re Felske*, 2008 WL 339501, Slip Copy, (Bankr. N.D. OH) (Court dismissed case as an abuse under Section 707(b). Debtors' household size was five. The court stated in pertinent part "[T]he Debtors will not be permitted to exclude from their 'disposal income' their entire housing expense of $*3,500* a month. Although the Court is not at this time inclined to set forth a specific figure as to the amount the Debtors should be permitted for their housing, it is safe to say that the Debtors could, without jeopardizing their health and welfare, cut their monthly housing expenses in half." (emphasis added) ); *In re McCain*, 2005 WL 4458679 (Bankr. M.D. NC) (Court dismissed case as an abuse under Section 707(b). The court noted that the debtors lived in a 3,618 square foot residence with four bedrooms with a swimming pool. The court found that $3,655 a month for housing was excessive and unreasonable for an individual seeking a chapter 7 discharge. The court stated "While the sentimental reason underlying the Debtors' desire to continue living in their current homestead may be understandable, it does not justify permitting them to erase an otherwise manageable debt load via a Chapter 7 proceeding.") (citations omitted, quotation marks omitted).

(38) If the debtors reduced to their housing expense to a total of $4,000 a month, and

made no other reduction (for example they kept their three vehicles) in their Schedule J expenses, they would have $2,612 in monthly disposable income or $156,720 over 60 months to repay their $267,150 unsecured debts.

(39)  Under the circumstances of this case, granting relief would be an abuse of the provisions of chapter 7 of the Bankruptcy Code.

Wherefore, the court should dismiss this case as an abuse pursuant to 11 U.S.C. §§ 707(b)(1) & (3).

May 5, 2008: W. Clarkson McDow, Jr.
United States Trustee

/s/ Jack I. Frankel
Jack Frankel, Attorney
Office of United States Trustee
115 South Union Street
Alexandria, VA 22314
(703) 557-7229

Certificate of Service

I hereby certify that on the 5th day of May, 2008, I mailed, first class, United States mail, postage fully prepaid, a true copy of this motion, and notice of motion and hearing to:

| Jeffery C. Frazier | Gregory H. Counts, Esq. | Gordon P. Peyton, Esq. |
| Jennifer A Frazier | Tyler, Bartl, Gorman & Ramsdell, PLC | Redmon. Peyton & Braswell |
| 25726 Meadowhouse Court | 700 South Washington St. Suite 216 | 510 King Street, Suite 301 |
| South Riding, VA 20152 | Alexandria, VA 22314-4252 | Alexandria, VA 22314 |

/s/ Jack Frankel
Jack Frankel