# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

In re:

Jeffrey C. Frazier,　　　　　　　　　　　　　　　　　Case No. 08-10094-RGM
Jennifer A. Frazier,　　　　　　　　　　　　　　　　Chapter 11
　　　　　Debtor.

## OBJECTION TO CONFIRMATION OF
## DEBTORS' PLAN OF REORGANIZATION

W. Clarkson McDow, Jr., United States Trustee, objects to the confirmation of the debtors' amended plan of reorganization hereinafter referred to as "Plan of Reorganization" or "Plan." [Doc 112]. The Plan of Reorganization should not be confirmed because it was not proposed in good faith, the debtors are not committing their 60-month projected disposable income to the repayment of the creditors, and the claims have been improperly classified.

On January 9, 2008, the debtors filed a petition for relief under chapter 7 of the Bankruptcy Code.

Jeffrey C. Frazier earns approximately $126,000 a year. Jennifer Frazier earns approximately $60,000 a year. *Amended Disclosure Statement* [Doc 111]. Both debtors have college degrees. Their household size is five. The debtors' debts are primarily consumer debts as defined in 11 U.S.C. § 101(8). *Voluntary Petition* [Doc 1].

The debtors own three houses: a house located in Triangle Virginia, a house located in Berwick Maine, and their primary residence, a house located in South Riding, Virginia. Under

the Plan, the debtors intend to surrender the houses located in Triangle, Virginia and Berwick, Maine and retain their residence in South Riding, Virginia. The house in South Riding the debtors value at $1,040,000. *Schedule A* [Doc 1, page 10]. The debtors have $127,851 in personal property. Their secured claims total $1,894,709 and their unsecured claims total $261,150. *Summary of Schedules* [Doc 1, page 8].

On May 5, 2009, the United States Trustee filed a motion to dismiss the case as an abuse pursuant to Section 707(b)(1) and (3) of the Bankruptcy Code. [Doc 37]. The motion alleged that the debtors, with a reasonable family budget, had the ability to repay a substantial portion of their debts. Further, the United States Trustee alleged, that the debtors' decision to retain their house in South Riding, a 5000 square foot house, five bedrooms, five and half baths, with a monthly mortgage payment of approximately $7,900 was excessive. Reducing their housing expense, for the sake of argument to $4,000 a month, and making no other belt-tightening restrictions to their Schedule J expenses, they would have $2,612 in monthly disposable income or $156,720 over a 60 month period of time to repay their $267,150 in unsecured debts. [Doc 37, page 8-9].

The motion to dismiss was never adjudicated. On December 11, 2008, the debtors converted the case to a case under chapter 11 of the Bankruptcy Code.

On June 14, 2009, the United States Trustee filed a motion to dismiss this case with prejudice. [Doc 93]. The motion contended that dismissal with prejudice was warranted for three reasons: (1) The debtors had never filed a chapter 11 monthly operating report since their case was converted to chapter 11. After the motion to dismiss was filed, the debtors filed monthly reports for January to May 2009. The debtors are still delinquent in filing monthly

reports for June and July 2009. (2) The debtors had not filed a disclosure statement and plan of reorganization. The debtors have now filed and the court has approved for dissemination the amended disclosure statement. A hearing for the confirmation of the Plan of Reorganization is scheduled for October 13, 2009. (3) The debtors had omitted from their initially filed Schedule B-Personal Property that they were entitled to tax refunds in the amount of $28,000. The debtors did file an amended Schedule B almost a year later disclosing that they were entitled to the $28,000 in tax refunds. The hearing on the motion to dismiss with prejudice has been continued to October 13, 2009.

Plan of Reorganization

The debtors' Plan of Reorganization divides the claims into seven classes.

Class 1 - $833,000, Aurora Loan Services, secured, listed as unimpaired, first trust on the debtors' residence. [1]

Class 2 - $27,429, Toyota Motor Credit Corp., secured, listed as unimpaired, liens on 2006 Toyota Sienna, $15,781, and on 2007 Toyota Tacoma, $11,648.

Class 3 - $17,327, Fort Still National Bank, secured, listed as unimpaired, lien on 2000 Toyota Sienna.

Class 4- $46,216, U.S. AES, student loan, unsecured, listed as unimpaired.

Class 5- $51,627, GE Money Bank, secured, listed as impaired, secured by debtors' furniture, to be paid $500 a month for 60 months.

Class 6- $230,269, American Servicing Corporation, $225,000, USAA Federal Savings

---

[1] American Home Mortgage has a second trust on the debtors' residence for $207,000. *Schedule D* [Doc 1, page 15]. However, under the Plan of Reorganization it is being paid as an unsecured creditor $287 a month for 60 months. *Amended Disclosure Statement* [Doc 111, page 10].

Bank, HSBC, trusts on two separate houses, listed as unimpaired, surrendering houses in full satisfaction of claim, no payments under plan.

Class 7-$418,296, nonpriority, unsecured claims, listed as impaired, to received $500 a month for 60 months.

## Plan of Reorganization Was Not Proposed in Good Faith

Section 1129(a)(3) of the Bankruptcy Code states "The court shall confirm a plan only if ... (3) The plan has been proposed in good faith and not by any means forbidden by law." The debtors' plan of reorganization was not proposed in good faith. It should not be confirmed.

Good faith in the context of the proposal of a plan is to be viewed in the "totality of the circumstances" surrounding confirmation. *In re Walker* 165 B.R. 994, 1001 (E.D. VA 1994) ("However, whether a plan is filed in good faith is a matter to be assessed in view of the totality of the circumstances which necessitated the plan, in perspective of the purposes of the Bankruptcy Code.") (citations omitted) see also, *In re T-H New Orleans Ltd. P'ship,* 116 F.3d 790, 802 (5th Cir. 1997) (The requirement of good faith must be judged in the light of the totality of the circumstances.)

The Plan was not proposed in good faith because there is no reorganization. Protecting the debtors' large and expensive house is the overriding objective of the Plan. Unsecured creditors will receive virtually the same amount as if the case had remained in chapter 7. The only difference is that they will have to wait five years to be paid under the Plan. In chapter 7, the trustee would have collected and disbursed to the unsecured creditors (minus approved administrative expenses) at a minimum the belatedly disclosed $28,000 tax refunds. The debtors' are proposing to distribute to the unsecured creditors $30,000 over a 60-month period.

The Plan of Reorganization thwarts the purpose of the Bankruptcy Code and evidences bad faith. As Chief Judge Lavien stated in *In re Belco Vending, Inc.* 67 B.R. 234, 240 (Bankr. D MA 1986) "To simply protect a luxurious residence is not the purpose of bankruptcy, in general or Chapter 11, in particular. The doctrine of a fresh start is abused when it becomes a device for preserving a favored luxury position. The Chapter 11 plan as it relates to the individual debtor, is denied confirmation."

The debtors omission from their initially filed Schedule B-Personal Property that they were entitled to tax refunds in the amount of $28,000 is disconcerting. The debtors filed an amended Schedule B almost a year later disclosing that they were entitled to the refund. The attorney for the chapter 7 trustee was not advised of the tax refund until November 3, 2008, approximately 11 months after the case was filed. The cases are legion regarding the paramount importance of filing accurate and complete schedules in bankruptcy cases. *In re Applied Safety, Inc.,* 200 B.R. 576, 587 (Bankr. E.D. PA 1996) (Bad faith for the purposes of determining whether chapter 11 plan should be confirmed involves showing that the debtor is abusing purpose or spirit of the Bankruptcy Code.).

Under the totality of the circumstances, the court should also consider the debtors' actions that resulted in their present financial situation. When they purchased their present residence they took on far more debt than they could handle.[2] They could not carry three houses

---

[2] Deposition of Jeffrey C. Frazier, conducted April 15, 2009, page 33:

```
     Q.    Well, one of the things, Mr. Frazier, is that you're paying
almost $8,000 a month for a mortgage for a house.  I think you have to say --
okay --
     A     Yes.
     Q     That's right.  Okay.  Okay.  You don't consider that a little
excessive?  You can't find a cheaper place, a less expensive place to live?
     A     At the time we bought this house, we could afford it.
     Q     Well, you said you could afford it.  It's consuming, it's
```

at the same time.  Instead of waiting until the other houses had been sold they plunged ahead and purchased the third house.

Debtors Not Committing Projected Disposable Income to Plan

The debtors are not committing their projected disposable income over a five year period to funding the Plan.

Section 1129(a)(15) provides that when an allowed, unsecured claimholder objects to the confirmation of the plan, the plan must provide: either (1) that the value of the property distributed under the plan to that claimholder is not less than the value of the claim; (2) and if that requirement is not met that the Debtor will be required to commit all disposable income to the plan over a five-year period.  Section 1129(a)(15) states:

> In a case in which the debtor is an individual and in which the holder of an allowed, unsecured claim objects to the confirmation of the plan -
> (A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
> (B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

The term "disposable income" means current monthly income received by the debtors (other than child support) less amounts reasonably necessary to be expended for their support,

---

**consuming --**
```
      A    It's called planning for the future.  I know what my finances are
today.  I know based on history of what I'll be making roughly in the next
year, the next year, and the next year.  To include I knew that my wife got
hired onto Northrop Grumman, and I know once she gets her clearance, within
after a year, her salary's also going to bump up at some point in the future.
So it's based on a progression.
```

support of their dependents and business expenses.  11 U.S.C. § 1325(b)(2).

In the May 2009 monthly operating report, the last monthly report filed by the debtors, the debtors had income of $19,915 and expenses of $16.661 for a cash profit of $3,253. *Debtor's Disclosure Statement Filed August 12, 2009* [Doc 111, page 16].   Additionally, they had no unpaid bills.  Under the Plan, they are proposing to pay their creditors a total of $1,000 a month.  GE Money Bank will receive $500 a month and their unsecured creditors will receive $500 a month.  Accordingly, they have $2,253 that should be going to repay their creditors.

Additionally, the May 2009 monthly operating report repudiates the debtors' Projected Monthly Income and Expenses exhibit attached to the Disclosure Statement. [Doc 111, page 24]. First, the exhibit does not state the debtors' projected gross monthly income but only the projected net income.  It is important that the debtors state their projected gross monthly because these debtors received substantial tax refunds for 2006 and 2007, $28,000.  Counting the tax refund adds approximately $1,166 to the debtors' projected <u>monthly</u> income.  This amount alone is twice what the unsecured creditors will receive under the Plan.

The debtors have not stated whether they have filed their federal and state income tax returns for 2008 or whether they have or anticipate receiving any refunds.  The failure to file returns due after the order for relief is cause to dismiss or convert a chapter 11 case.  11 U.S.C. § 1112(b)(4)(I).  Further, in an uncodified section of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 it states that "The court shall not confirm a plan of reorganization in the case of an individual under chapter 11 or chapter 13 of title 11, United States Code, unless requested tax documents have been filed with the court."[3]

---

[3] In accordance with Bankruptcy Rule 9037, no personally identifiable information should be filed with the court.

### Claims are Improperly Classified in the Plan

A plan may place a claim in a particular class only if such claim is substantially similar to the other claims of such class. 11 U.S.C. § 1122(a). The Plan places dissimilar claims in the same class.

The four claims of GE Money Bank should not be classified into a separate class, Class 5, but placed in Class 7, the unsecured class.

GE Money Bank filed four (claims 1-4) proofs of claim. Claim number 1 is for $11,850. Claim number 2 is for $12,837. Claim number 3 is for $2,400. Claim number 4 is for $24,800. None of the four proofs of claim filed by GE Money Bank alleged that the respective claim was secured. No adversary proceeding has determined that GE Money Bank claims are secured by the debtors' furniture. If the claims of GE Money Bank are not secured and are substantially similar to the other unsecured claims in Class 7, then these claims should not be in a separate class.

Second, the value of the furniture is $10,000. *Schedule B-Personal Property* [Document 1 page 11]. Assuming that GE Money Bank has a secured claim on the Debtors' furniture, it is only secured to the value of its collateral. The unsecured (deficiency) portion of the claim is therefore approximately $41,627 ($51,887- total amount of the 4 claims minus $10,000-current. value of Debtors' furniture). The Plan improperly and unfairly places the deficiency portion of the claims of GE Money Bank into a separate class.[4]

The Plan improperly classifies Class 6 - claims of America's Servicing Corporation,

---

[4] "A deficiency claim is an unsecured claim which cannot be placed in the same class as the secured portion of an undersecured creditor's claim. The undersecured portion of an undersecured creditor's claim must be classified with other unsecured claims, absent a compelling business reason to the contrary." 5 Bankr. Services L. Ed. § 44:65.

HSBC and USAA Federal Savings Bank as unimpaired. *Plan of Reorganization* [Doc 112, page 7]. Under the Plan, the debtors are surrendering the collateral, the house in Berwick, Maine and the house in Triangle, Virginia, in full satisfaction of the creditors' claims. The legal, equitable, and contractual rights of these creditors are being altered. Class 6 is an impaired class.

Also, Class 6 is composed of claims that are not substantially similar. These creditors were secured by different properties or different security positions in the property. America's Servicing Corporation is secured by the house in Berwick, Maine. HSBC and USAA are secured by different positions in the house in Triangle, Virginia.

Wherefore, the United States Trustee asks that the Plan of Reorganization not be confirmed.

         W. Clarkson McDow, Jr.
         United States Trustee

         /s/ Jack Frankel
         Jack Frankel, Attorney
         Office of United States Trustee
         115 South Union Street
         Alexandria, VA 22314
         (703) 557-7229